UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
A.B.

                              Plaintiff,

        -against-

C.D.,

                            Defendant.
-------------------------------------------------------------------X

Case No. 2:17-cv-05840 (DRH-AYS)

## PLAINTIFF'S MEMORANDUM SHOWING CAUSE
## WHY THIS ACTION SHOULD PROCEED PSEUDONYMOUSLY

MENAKER & HERRMANN LLP
*Attorneys for Plaintiff*
10 East 40th Street
New York, New York 10016
(212) 545-1900

February 7, 2018

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

Introduction and Summary ......................................................................................................1

Factual Background .................................................................................................................2

    A.    A.B.'s Hiring by Hofstra...............................................................................................2

    B.    The Accusations by C.D. ............................................................................................3

    C.    Hofstra's Handling of C.D.'s Accusations .................................................................4

Procedural Background.............................................................................................................6

Argument ..................................................................................................................................8

    I.    Plaintiff Has a Strong and Justifiable Interest in Anonymity .....................................8

    II.    The Court Accorded Anonymity to Jane Doe/C.D.
           Fairness Requires Equal Treatment ..........................................................................11

Conclusion .............................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Doe No. 2 v. Kolko*,
  242 F.R.D. 193 (E.D.N.Y. 2006) .................................................................................. 10

*Doe v. Colgate Univ.*,
  2016 WL 1448829 (N.D.N.Y. 2016) ..................................................................... 2, 9, 12

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) ............................................................................................ 8

*Doe v. Cuomo*,
  2013 WL 1213174 (N.D.N.Y. 2013) ............................................................................ 11

*Doe v. Delta Airlines Inc.*,
  672 F. App'x 48 (2d Cir. 2016) .................................................................................... 10

*Doe v. Delta Airlines, Inc.*,
  310 F.R.D. 222 (S.D.N.Y. 2015) ................................................................................. 10

*Doe v. French*,
  458 F. App'x 21 (2d Cir. 2012) .................................................................................... 11

*Doe v. Hagar*,
  765 F.3d 855 (8th Cir. 2014) ....................................................................................... 11

*Doe v. Individuals*,
  561 F. Supp. 2d 249 (D. Conn. 2008) .......................................................................... 11

*Doe v. Johns Hopkins Health Sys. Corp.*,
  2017 WL 1293568 (D. Md.) ........................................................................................ 11

*Doe v. Kogut*,
  2017 WL 1287144 (S.D.N.Y. 2017) .............................................................................. 8

*Doe v. Smith*,
  105 F. Supp. 2d 40 (E.D.N.Y. 1999) ........................................................................... 10

*Doe v. United Services Life Ins. Co.*,
  123 F.R.D. 437 (S.D.N.Y. 1988) ................................................................................. 10

*Doe v. Univ. of Conn.*,
  2013 WL 4504299 (D. Conn. 2013) ........................................................................ 8, 10

*Does I thru XXIII v. Advanced Textile Corp.*,
  supra, 214 F.3d ................................................................................................................ 12

*EW v. New York Blood Center*,
  213 F.R.D. 108 (E.D.N.Y. 2003) ..................................................................................... 8

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993) ................................................................................................ 9

*John Doe v. Brandeis Univ.*,
  122 F. Supp. 2d 561 (D. Mass. 2016) ............................................................................ 13

*Plaintiffs #1-21 v. County of Suffolk*,
  138 F.Supp.3d 264 (E.D.N.Y. 2015) ............................................................................... 8

*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) ................................................................................... 8, 9, 11

*Smith v. Edwards*,
  175 F.3d 99 (2d Cir. 1999) ............................................................................................... 9

**Statutes**

42 U.S.C. §§2000e ................................................................................................................ 13

**Rules**

Fed. R. Civ. P. 10(a) ............................................................................................................... 8

**Other Authorities**

Restatement (Second) of Torts § 574, at 195-96 (1977) .................................................... 11

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
  A.B.                                              :
                                                    :
                                                    :   Case No. 2:17-cv-05840 (DRH-AYS)
                                 Plaintiff,         :
                  -against-                         :
                                                    :
                                                    :
  C.D.,                                             :
                                                    :
                                 Defendant.         :
-------------------------------------------------------------------X
```

## PLAINTIFF'S MEMORANDUM SHOWING CAUSE
## WHY THIS ACTION SHOULD PROCEED PSEUDONYMOUSLY

On January 24, 2018, the Court docketed an Order directing Plaintiff A.B. to show cause why this action should not proceed under his true name. A similar Order has been docketed in the parallel case, *A.B. v. Hofstra University*, 2:17-cv-05562-DRH-AYS, directing both Plaintiff and Defendant Hofstra to show cause why the action should not proceed under both parties' true names. This memorandum is respectfully submitted to demonstrate why the Court should permit Plaintiff to continue his use of a pseudonym in the captioned action. A memorandum to the same effect is being filed contemporaneously in the parallel case.

The Court has already addressed this issue in a second parallel case based upon the same operative facts as this one and has permitted pseudonymous treatment for the plaintiff there. The parties to that second parallel case, *Jane Doe v. Hofstra University*, 2:17-cv-0179-DRH-AYS, are the Defendants in the two actions originally brought by Plaintiff A.B. in state court and removed to this Court. This Court's decision to approve pseudonymous treatment for Jane Doe (who is denominated as "C.D." both in this case and in the parallel discrimination case) accords with a series of recent rulings in other federal cases involving allegations of sexual

harassment and gender-bias. Protecting the anonymity of complainants and accused parties where such allegations have been made "can be an important safeguard to ensure that the due process rights of all parties are protected" and avoid "further exacerbat[ing] the emotional and reputational injuries" alleged. *Doe v. Colgate University*, 2016 WL 144-8829, at *2-3 (N.D.N.Y.).

Plaintiff here has taken great care to assure that the anonymity of Jane Doe/C.D., a member of the women's tennis team coached by A.B., has been preserved in the papers filed to date. Hofstra has also carefully assured such anonymity in the case brought against it by Jane Doe/C.D. It would be a grave injustice and a denial of equal treatment if Plaintiff A.B. were to be denied the ability to continue such anonymity while the Court continued to protect Jane Doe/C.D., who is alleged to have perpetrated grotesque falsehoods against A.B. for financial gain.

## FACTUAL BACKGROUND

### A.  A.B.'s Hiring by Hofstra

The facts relevant to all three actions may be summed up as follows.[1] Hofstra University ("Hofstra") is a private, nonsectarian university with its main campus on Long Island in the Village of Hempstead, New York. It represents itself as being Long Island's largest private institution of higher education (Discrimination Compl. ¶ 3). The school has an NCAA Division I program in which athletic scholarships are given to recruited players.

Plaintiff "A.B." was hired as Director of Tennis and head coach of the Hofstra

---

[1] The following account is based upon the Complaint in this action ("Compl."), a copy of which is annexed as Exhibit A to the accompanying Declaration of Theodor D. E. Bruening, dated February 7, 2018 ("Bruening Decl."). A.B.'s Amended Complaint in the action entitled *A.B. v. Hofstra University*, also removed from state court and referred to herein as the "Discrimination Compl.", is annexed as Exhibit D to the Bruening Decl.

men's and women's varsity tennis teams in January 2016 (*id.* ¶ 2). He had previously served for over a decade as tennis coach of male and female student athletes at both the high school and college level. He had impeccable credentials when Hofstra hired him in in mid-year to take over its Division 1 tennis program following the departure of a prior coach, including years of working with female tennis players. This was his first experience in an environment where athletic scholarships were given, which is highly relevant to the present proceedings. Certain of the tennis players had received only partial scholarships, including the Student referred to in the Complaint, a first-year tennis player from a Canada, who had been recruited to Hofstra on a 45% tennis scholarship by the prior coach (*id.* ¶ 7). Conflict over this limitation in the scholarship was the driving force behind what ensued, a critical fact highlighted in the Complaints (*id.* ¶¶ 7-19).

**B.     The Accusations by C.D.**

As alleged in the Complaints in both of A.B.'s removed state court actions — this case and the *A.B. v. C.D.* case — when A.B. started working at Hofstra in January 2016, he inherited the arrangements that the prior Director of Tennis had already put in place, which included the same allocation of athletic scholarship funds to members of the tennis teams (Compl. ¶ 7). In late April 2016, just before leaving for the season-ending conference tournament, Jane Doe/C.D., then a first-year foreign student on the Women's Varsity Tennis Team, approached A.B. in a parking lot near the Hofstra tennis courts and asked him to confirm "that her 45% athletic scholarship would be increased with full scholarship for the following school year." She claimed that the predecessor coach had promised this increase (*id.* ¶ 8). A.B. promised to follow up with the Hofstra Athletics Department because he knew nothing of the alleged "promise."

Departmental staff advised that they had no record of any such increase, which

A.B. promptly reported to the player (*id.* ¶ 11). A short time thereafter, A.B. received a telephone call from Jane Doe/C.D.'s father, a former Russian athlete now living in Ontario, Canada. The father threatened the coach that if he did not guarantee Jane Doe/C.D. a full scholarship, "trouble would 'come back to [him]'" (*id.* ¶ 15). A.B. reported the telephone threat to his supervisor in the Hofstra Athletics Department, who told him to take no further action (*id.* ¶ 16).

Thereafter, Jane Doe/C.D. told A.B. that her parents could no longer afford her attending Hofstra and asked him to provide a "release" as required under NCAA rules that would permit her to transfer to another university and tennis program; A.B. agreed to provide the requested release (*id.* ¶ 21). The request, it turned out, was a sham. As the Complaint avers, Jane Doe/C.D. later admitted in a telephone call to A.B. in June 2016 that she had "never really looked for another school" (*id.* ¶ 28). Instead, in July 2016 the lawyer now representing Jane Doe/C.D. sent a letter to the President of Hofstra University accusing A.B. of quid pro quo sexual harassment and other wrongful acts and demanded that Jane Doe/C.D. "be properly compensated for the harms that she has suffered" (Ex. A to Compl., p. 2). The letter threatened that Jane Doe/C.D. would take the matter to court unless a financial settlement could be achieved by A.B. (*id.* p. 3).

C.     **Hofstra's Handling of C.D.'s Accusations**

A.B. was not sent a copy of Jane Doe/C.D.'s accusations. Instead, in late July 2016 he was summoned to the office of the General Counsel of Hofstra, together with the Athletics Director, where a deputy general counsel named Jennifer Mone questioned him about his communications with members of the tennis program (Compl. ¶ 30). Later in the meeting, observing that Ms. Mone was reading from a document, A.B. asked if he could see what she was referring to, and at that point the Hofstra counsel allowed him to see the letter from Jane

- 4 -

Doe/C.D.'s lawyer (the "Jane Doe/C.D. Letter"). It contained a half-dozen extreme charges against A.B. to the effect that he had conditioned the giving of financial aid on sexual favors and engaged in other grossly harassing and improper conduct (*id.* ¶¶ 31-41 and Ex. A thereto). These charges were false and defamatory.

Although A.B. objected to the false charges at the meeting with Hofstra's deputy general counsel, he was never given an opportunity to rebut them by organizing and presenting evidence demonstrating their inconsistency with the documentary record (*id.* ¶ 44). Hofstra publishes policies and procedures for adjudicating claims of sexual harassment and sex discrimination including, *inter alia,* provisions for investigation, issuance of written reports, disclosure of such reports to the accused person, and provision of an opportunity to respond (*id.* ¶ 45). The Hofstra counsel represented to A.B. that a full investigation would be made and a report issued that he would be able to see (*id.* ¶ 47). The school's policy, however, was not followed. Hofstra personnel and team members with relevant knowledge were not interviewed. No report was presented to A.B., and he was not given the promised opportunity to respond (*id.* ¶48).

Instead, A.B. continued to work through the rest of the summer through the beginning of the new school year in September 2016, with repeated assurances from the Athletics Department that such false complaints were not uncommon and that he had nothing to worry about. But on September 7, 2016, he was called into another meeting with the deputy general counsel, also attended by a Hofstra human resources official and the Athletics Director (*id.* ¶ 49). At that meeting, Hofstra's representative repeated several of the false allegations from the Jane Doe/C.D. Letter, together with new allegations A.B. had not previously heard of. When this was completed, and without any opportunity for A.B. to respond, he was fired (*id.* ¶¶ 51-54).

The procedure for addressing sexual harassment accusations had been completely ignored (Discrimination Compl. ¶¶ 47-48).

Since then, with a wife and family to support, A.B. has been unable to obtain full-time employment, and by all indications, Jane Doe/C.D. and/or others acting in her behalf have taken steps aimed at further defaming A.B. and destroying his reputation and career. This action against Jane Doe/C.D. for defamation addresses these issues.

### PROCEDURAL BACKGROUND

Following his termination by Hofstra, plaintiff brought the instant action in New York State Supreme Court, Queens County, against Jane Doe/C.D. for defamation tied to the latter's scheme to extort from Hofstra an increased athletic scholarship and other financial benefits. Plaintiff was careful to use pseudonyms for himself and defendant, denominating the parties as "A.B." and "C.D." respectively. A.B. also filed, in the same court, an action against Hofstra for gender-based discrimination.

Unknown to A.B. at the time he commenced proceedings in the state court, C.D., with the assistance of the same attorney whom she had engaged to send the defamatory letter, had filed an action against Hofstra in this Court alleging violations of Title IX of the Civil Rights Act of 1964. Upon application by that attorney, this Court granted Jane Doe/C.D. permission to appear in the case under the pseudonym "Jane Doe."[2]

Within the time permitted by the removal statute, both Hofstra and Jane Doe/C.D. removed the respective state court actions in which they are defendants to the Eastern District,

---

[2] A.B.'s counsel inquired of the attorney for Jane Doe/D.C. as to whether he would accept service of the summons and complaint in the state court action. After initially advising that he would do so, counsel subsequently rejected service on the alleged ground that he no longer represented Jane Doe/C.D. Accordingly, A.B. was required to engage a process server to make personal service. It now turns out that her attorney was at that time (and continues to be) counsel of record for her in the *Jane Doe v. Hofstra University*.

where the cases were assigned to different judges. The removed *Hofstra* case was assigned to Judge Feuerstein who, pursuant to her usual practices, held an early pretrial conference on October 30, 2017. The removed *A.B. v. C.D.* case – this case – was assigned to Judge Seybert, who has different procedures. In this case, Plaintiff A.B. filed a prompt motion on October 20, 2017, requesting consolidation and permission to continue with pseudonyms for both parties.

        At the October 30, 2017 conference before Judge Feuerstein, the judge questioned why the removed cases had not been consolidated (Bruening Decl. ¶ 8). Within two business days thereafter, both removed actions had been reassigned to Judge Hurley and Magistrate Judge Shields. On November 2, 2017, therefore, pursuant to the Magistrate Judge's Individual Practice Rules, A.B. filed a letter request for a pre-motion conference on the subjects of consolidation and continued use of pseudonymous party names in the removed actions. Based on that letter, the Magistrate Judge issued an Order in the *Jane Doe* case on November 7, 2017, denying consolidation (Bruening Decl. Ex. F). The Order also denied A.B.'s request for continued anonymous treatment but preserved such treatment for Jane Doe/C.D. (*id.*). The Magistrate Judge took no action with respect to the pending motion originally submitted to Judge Seybert in this case. That motion remains listed on the docket, Docket Nos. 5-9, as unresolved.

        On November 27, 2017, A.B. timely filed his objections to the 11/7/17 Order in this Court in the *Jane Doe* case, which on January 17, 2018, issued an Order affirming the rulings below (*Jane Doe* case, Docket No. 31; Bruening Decl. Ex. G). The affirmance emphasized, however, that it was effective only in the *Jane Doe* case and stated in a footnote that A.B. was free to make a motion to proceed pseudonymously in the two removed cases if he wished to do so (*id.* p. 2, fn. 1). The Court's orders to show cause in both cases have now made clear that it wishes to address such motions expeditiously.

**ARGUMENT**

### I. Plaintiff Has a Strong and Justifiable Interest in Anonymity.

While Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of [a] complaint must name all the parties," "[c]ourts have nevertheless 'carved out a limited number of exceptions to the general requirement of disclosure [of the names of parties] which permit plaintiffs to proceed anonymously.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (internal citation omitted). The Second Circuit in *Sealed Plaintiff* set out a non-exhaustive list of ten factors to consider when engaging in this balancing test. *Id.* at 190; *see also Plaintiffs #1-21 v. County of Suffolk*, 138 F.Supp.3d 264 (E.D.N.Y. 2015); *EW v. New York Blood Center*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). In deciding whether a party should be permitted to proceed anonymously, courts must balance a party's interest in anonymity against "both the public interest in disclosure and any prejudice to the [party]." *Id.* at 189; see also *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) (plaintiff brought suit against university for violation of Title IX by demonstrating sex bias against him in the way in which it investigated a claim of alleged sexual assault); *Doe v. Kogut*, 2017 WL 1287144, at *12 (S.D.N.Y. April 6, 2017) ("This case involves serious allegations that may irreparably harm the reputations of all involved."); *Doe v. Univ. of Conn.*, 2013 WL 4504299 (D. Conn. Aug. 22, 2013) (permitting both plaintiff and defendant to proceed anonymously in a case alleging sexual harassment).

The majority of the factors in *Sealed Plaintiff* weigh in favor of allowing A.B. to proceed anonymously in this action:

(1) The litigation involves matters that are "highly sensitive and [of a] personal nature." Jane Doe/C.D. has falsely accused A.B. of sexually harassing her, a defamatory accusation that caused A.B. to lose his employment. If A.B. were to bring this action using his

real name and make these allegations part of the public record, even a victorious result would cause him harm by additionally publicizing Jane Doe/C.D.'s false claims. Moreover, upon information and belief, Jane Doe/C.D. falsely claimed to Hofstra that A.B. made inappropriate statements to Jane Doe/C.D. about his divorce prior to his remarriage. Publicizing these statements could cause harm to A.B.'s spouse and stepchildren if these false statements were to be made public.

Courts have looked to the protection of innocent nonparties in granting parties permission to proceed anonymously. *See, e.g., Sealed Plaintiff*, 537 F.3d at 190; *Smith v. Edwards*, 175 F.3d 99, 99 n. 1 (2d Cir. 1999) ("For the sake of the privacy of plaintiff's child, pseudonyms for plaintiff and his family are employed throughout this opinion."); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); *see also Doe v. Colgate Univ.*, 2016 WL 1448829 at *2-3 (N.D.N.Y. April 12, 2016) "[T]he Court finds that protecting the anonymity of sexual assault victims *and those accused of committing sexual assault* can be an important safeguard to ensure that the due process rights of all parties are protected…" (emphasis added).

(2)     A.B. risks retaliatory physical and mental harm if publicly identified. A.B. faces a very real risk of suffering physical or mental harm as a result of retaliation from Jane Doe/C.D.'s father, who has already threatened him (Title VII Compl. ¶ 11). A.B. is required to refer to Jane Doe/C.D. using a fictitious name; he should be able to do the same for himself. Jane Doe/C.D.'s father has already shown his willingness to make personal threats, and there is reasonable ground to believe he already has a harsh reaction to the Complaints in both cases. Designating Jane Doe/C.D. and A.B. by using fictitious names can help defuse a volatile situation and reduce the likelihood of retaliatory action against A.B. and his family.

(3)     There is no prejudice to Jane Doe/C.D. Jane Doe/C.D. is, of course, fully

aware of A.B.'s identity as her former tennis coach. Since Jane Doe/C.D. "already knows Doe's true identity, [she] will have full discovery rights as the case progresses, and [she] will only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action." *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988). "Prejudice" in the context of litigation refers to conditions that unfairly disable a litigant's ability to advance or defend claims. In a case where a pseudonym is proposed to be used, prejudice arises where a party's identity is in fact unknown to the other parties and affects their ability to respond. *See*, *e.g*., *Doe v. Smith*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999) (where the parties' mutual knowledge of their identities eliminated any possible prejudice).

Here, Jane Doe/C.D is not denied any relevant information that disables or impairs its ability to proceed—she has always had full knowledge of who A.B. is. The District Courts of this circuit have found a lack of prejudice where the identity of the party is known to all the litigants, since pseudonyms serve to prevent harm from the views of persons *outside* the litigation. *See, e.g., Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) ("[D]efendants do not identify how their ability to conduct discovery or impeach plaintiff's credibility has been impaired if he is permitted to proceed under a pseudonym. … Indeed, defendants already know plaintiff's true identity" (citations omitted)); *Doe v. Smith*, *supra*, 105 F. Supp. 2d 40 (parties' mutual knowledge of their identities negated alleged prejudice); *Doe v. Univ. of Connecticut*, 2013 WL 4504299, at *28 (D. Conn.) (no prejudice where only effect is inconvenience). *See also Doe v. Delta Airlines Inc*., 672 F. App'x 48, 51 (2d Cir. 2016), in which the District Court had "granted Doe's motion to file her complaint under a pseudonym, 'until such time as the Court orders the name to be disclosed.'" "A different balance of interests, however, comes into play at the trial phase…" *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd,* 672 F.

- 10 -

App'x 48 (2d Cir. 2016). In accordance with *Delta*, this Court could at a minimum permit anonymity during the discovery phase of the litigation; the issue can then be revisited for trial.

(4) The public's interest is minimal. Hofstra is a private institution, and none of the relevant individuals is a public figure. The courts have found the public interest factor weak where, as here, the issues are largely legal and procedural. *See Sealed Plaintiff,* 537 F.3d at 190; *Doe v. Cuomo*, 2013 WL 1213174, at *7 (N.D.N.Y. Feb. 25, 2013). Public disclosure of A.B.'s identity is unnecessary to the cause of action and has no bearing on Jane Doe/C.D's ability to fully and fairly defend the case.

(5) Finally, there are no alternative mechanisms for protecting the confidentiality of A.B.

Many of the cases in which courts grant anonymous treatment concern claims for defamation, since the need to plead in haec verba exposes the plaintiff (in this instance, A.B.) to reputational risk. *See, e.g., Doe v. French*, 458 F. App'x 21 (2d Cir. 2012); *Doe v. Hagar*, 765 F.3d 855 (8th Cir. 2014); *Doe v. Individuals*, 561 F. Supp. 2d 249 (D. Conn. 2008); *Doe v. Johns Hopkins Health Sys. Corp.*, 2017 WL 1293568 (D. Md.). Any statement that falsely imputes "serious sexual misconduct" to a person, as with Jane Doe/C.D.'s multiple statements here, subjects the publisher to liability, without any need to prove the special harms required for other libelous speech. See 3 Restatement (Second) of Torts § 574, at 195-96 (1977). A.B. should be able to remedy the harm from these false statements without the harms being made even more damaging.

## II. The Court Accorded Anonymity to Jane Doe/C.D. Fairness Requires Equal Treatment.

This Court has already granted anonymous treatment to Jane Doe/C.D. in *Doe v. Hofstra*. The arguments which this Court found to be persuasive there also apply to A.B. here.

The Court granted Jane Doe/C.D.'s motion because "the plaintiff's interest in proceeding pseudonymously outweighs the public's interest in disclosure and any prejudice to the defendant. Specifically, given that the litigation involves matters of a personal nature and that identification by name poses a risk of harm to the plaintiff…" (Bruening Decl. Ex. H). As shown *supra*, these considerations apply equally to A.B. The potential for prejudice to A.B. is a mirror image of the problems referred to by Jane Doe/C.D. in her application to seal the record.

In her motion to seal (*Doe v. Hofstra*, Docket No. 3), Jane Doe/C.D. identified "intimate issues," "emotional suffering," and "ostracization and retaliation" by her community as reasons for requesting pseudonymity. *Id*. 3-4. The Court granted the motion based on these facts. The same considerations apply to A.B.—the issues are no less intimate, and the suffering no less great since he has lost his livelihood as the direct result of her defamation. Moreover, he is subject to the same risk of "ostracization and retaliation" by a society in which sexual harassment charges involving high visibility individuals (unlike A.B.) have been repeatedly in the news. If such considerations are sufficient for a grant of anonymity for Jane Doe/C.D., so too should they be for A.B. *See, e.g., Does I thru XXIII v. Advanced Textile Corp., supra*, 214 F.3d at 1067-1068 (parties may use pseudonyms "when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment.").

Fairness requires an even-handed approach. As the court observed in *Colgate*, "revealing Plaintiff's identity at this stage risks undermining the fairness and impartiality of the proceedings. The rise of sexual assaults on college campuses is a troubling epidemic, however, in addressing this epidemic, courts have a duty to ensure that '[e]ach case must be decided on its own merits, according to its own facts. …it is reasonable to require that [a party] be provided a fair opportunity to defend himself and an impartial arbiter to make that decision.'" *Doe v.*

- 12 -

*Colgate Univ.*, 2016 WL 1448829, at *3, *citing John Doe v. Brandeis Univ.*, 122 F. Supp. 2d 561, 573 (D. Mass. 2016). Such fairness in the adjudicatory process is undermined when one of the parties receives a benefit — i.e., anonymity — not accorded to the other party. U.S. Const., Amdmt. V., Civil Rights Act of 1964, Title VII, 42 U.S.C. §§2000e, *et seq*. A.B. should be treated the same as Jane Doe/C.D. to avoid the appearance that the Court has prejudged any of the three related cases before it.

It was appropriate and just that Jane Doe/C.D. was accorded the right to use a pseudonym in her claims against Hofstra (misguided as they are). In all of A.B.'s filings, A.B. has preserved the anonymity of Jane Doe/C.D. even though Jane Doe/C.D. never previously requested such treatment from A.B. In contrast, Jane Doe/C.D. did not accord the same protection to A.B. when she published his name in her filings in the captioned case. Indeed, Jane Doe/C.D. makes clear she did this to be punitive. In her letter of 11/3/17, Jane Doe/C.D. claims that A.B. "maliciously spread[ ] lies to the student body about Doe's complaints… [A.B.'s action is] a thinly veiled attempt to exact revenge (Bruening Decl. Ex. E)." These assertions are unsupported and untrue, as the objective record shows — if A.B. wanted to retaliate against Jane Doe/C.D., he would not have masked the identity of Jane Doe/C.D. in his filings. A.B. simply asks for equal treatment.

## CONCLUSION

For all these reasons, because of the sensitive nature of the allegations, the absence of prejudice, and the importance of evenhandedness, plaintiff A.B. respectfully requests that this Court grant his application for permission to proceed pseudonymously.

Dated: February 7, 2018

                          MENAKER & HERRMANN LLP

                          By: _____
                                  Theodor D.E. Bruening

                          *Attorneys for Plaintiff*
                          10 East 40th Street
                          New York, New York 10016
                          (212) 545-1900

Stephen D. Houck
    Of Counsel