UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JEFFREY MENAKER,

                              Plaintiff,                   **MEMORANDUM AND ORDER**
                                                                                    2:17-cv-5840 (DRH)(AYS)

     - against –

C.D.,

                              Defendant.
-------------------------------------------------------X

**APPEARANCES**

**Attorneys for Plaintiff**
OFFIT KURMAN, P.A.
10 East 40th Street
New York, NY 10016
By:    Cheryl L. Davis, Esq.
        Theodor D. Bruening, Esq.
        Stephen D. Houck, Esq.

MENAKER & HERRMANN LLP
10 East 40th Street
Brooklyn, NY 11238
By:    Alexander Mirkin, Esq.

**Attorneys for Defendant**
WARSHAWSKY LAW FIRM
350 Fifth Ave. 59th Floor
New York, NY 10118
By:    David Samuel Schwartz, Esq.

PHILLIPS & ASSOCIATES, PLLC
45 Broadway, Suite 620
New York, NY 10006
By:    Dorina Cela, Esq.
        Parisis F. Filippatos, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Jeffrey Menaker ("Plaintiff") brought this action against Defendant C.D. ("C.D." or "Defendant") for defamation. Presently before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6).[1] For the reasons explained below, the motion to dismiss is denied.

## BACKGROUND

The following relevant facts come from the Amended Complaint and are assumed true.[2]

On or about January 15, 2016, Hofstra hired Plaintiff as the Director of Tennis and the Head Coach of the men's and women's varsity tennis teams. (Amended Compl. ("Compl.") [DE 18] ¶ 4.) Plaintiff alleged that he inherited the "annual allocation of athletic scholarship funds to members of the tennis teams" from his predecessor. (*Id.* ¶ 7.)

In late April 2016, just before the season-ending conference tournament, Defendant approached Plaintiff to confirm that her scholarship would be increased from 45% to 100%. (*Id.* ¶ 8.) Defendant claimed that this increase had been promised by Plaintiff's predecessor. (*Id.*) Plaintiff said he was not aware of the promise, but that he would investigate. (*Id.*) He conversed with his supervisor, Alyssa Morales-Kelly ("Kelly"), who confirmed that the Department had no record of a promise to increase the scholarship. (*Id.* ¶ 10.) Plaintiff then informed Defendant that he could not increase her scholarship for her sophomore year, but he could give her a full

---

[1] Defendant originally moved to dismiss pursuant to Rule 12(c) as well, for Defendant's failure to obtain permission to proceed pseudonymously. As the Court has already decided the issue, and declined to permit Plaintiff to proceed pseudonymously, the Court will not address the Rule 12(c) motion here. *See A.B. v. C.D*, 2018 WL 1935999, at *4 (.E.DN.Y. Apr. 24, 2018).

[2] The facts set forth herein are similar to those set forth in *Menaker v. Hofstra Univ.*, 2018 WL 1935986 (E.D.N.Y. April 24, 2018), which is related to this case for purposes of discovery.

scholarship for her junior and senior years. (*Id.* ¶ 13.) In May 2016, Defendant's father called Plaintiff and yelled at him on the phone about the scholarship situation. (*Id.* ¶ 14.) Plaintiff reported the call to Kelly. (*Id.* ¶ 16.)

That same month, Defendant visited Plaintiff's office to inform him that she could no longer afford to attend Hofstra. (*Id.* ¶ 17.) Defendant later called Plaintiff to ask him to "release" her under the NCAA rules so she could transfer to another University and tennis program. (*Id.* ¶ 21.) Plaintiff and Defendant texted back and forth regarding whether she would look for another school, under which circumstance Plaintiff informed Defendant that he would rescind the offer for a full scholarship for her junior and senior years. (*Id.* ¶¶ 24–27.) In June 2016, Defendant informed Plaintiff that she had decided to return to Hofstra for her sophomore year. (*Id.* ¶ 27.) Around this same time, Hofstra Athletic Department administered anonymous reviews of the coaching staff. (*Id.* ¶ 19.) Thereafter, Plaintiff met with Kelly to discuss the reviews, which she said were all positive. (*Id.* ¶ 20.)

In July 2016, Plaintiff was summoned to the office of the Deputy General Counsel, Jennifer Mone ("Mone"), along with the Vice President and Director of Athletics, Jeffrey Hathaway ("Hathaway"). (*Id.* ¶ 29.) Mone asked Plaintiff about his methods of communicating with students, and then presented him with a letter Defendant had received from the Student's attorney. (*Id.* ¶¶ 30–31.) The letter laid out several accusations against Plaintiff, including but not limited to: (1) that the Student had been "subjected to unwanted and unwarranted sexual harassment" by Plaintiff; (2) that Plaintiff "had a strange obsession with [the Student's] menstrual cycle, and would repeatedly comment about when [the Student] was getting her period[;]" (3) that Plaintiff was inappropriately concerned with the physical appearance and presentation of women on the team; (4) that Plaintiff had screamed obscenities and verbal abuse

at female players on opposing teams; and (5) that Plaintiff had sent Defendant a YouTube video that was "inappropriate." (*Id*. ¶¶ 32–39 (quoting Letter from David Schwartz, Esq. to Office of the President, Hofstra Univ. (July 22, 2016) Ex. A to Compl. (hereinafter "Letter")) (internal quotation marks omitted).) During that meeting, Plaintiff denied the claims. (*Id.* ¶ 44.) Plaintiff claims that "upon information and belief" Hofstra did not investigate the complaints or interview the Student's teammates. (*Id.* ¶ 46.)

On September 7, 2016, Plaintiff was called to a meeting with Hofstra's Director of Human Resources, Evelyn Miller-Suber ("Miller"). (*Id.* ¶ 49.) The meeting also included Mone and Hathaway. (*Id.*) At this meeting, Mone repeated the allegations made against Plaintiff that were discussed in the prior meeting, and also shared that Plaintiff had been accused of making comments to his students about his divorce. (*Id.* ¶ 51.) Plaintiff's employment was then terminated. (*Id.* ¶ 54.)

Plaintiff brought the instant action in state court on June 1, 2017. Defendant removed the action to this Court on October 5, 2017. Defendant filed the instant motion to dismiss on March 5, 2018.

## DISCUSSION

I. *Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## II. The Parties' Arguments

The Complaint sets forth two causes of action: first, for defamation; and second, for punitive damages resulting from the alleged "willful and wanton misconduct by Defendant[.]" (Compl. ¶¶ 61–70.)

Defendant argues in her moving papers that Plaintiff has failed to state a claim for defamation for the following reasons: the statements at issue were opinions or truth; the statement about his divorce was not pleaded with specificity; the statements were privileged; and the statements were neither defamation per se nor did they cause special damages.

## III. The Motion to Dismiss is Denied

### A. Defamation Legal Standard

"To state a claim for defamation under New York law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Burton v. Label, LLC*, 2018 WL 4759735, at *11 (S.D.N.Y. Sept. 30, 2018) (citing *Thia v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010)); *see also Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009).

With regards to the first element, under both New York and federal law "statements of pure opinion are not actionable as defamation . . . because a statement of opinion is not an assertion of fact that can be proved false[.]" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 459–60 (S.D.N.Y. 2012) (quoting *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006)). To determine whether a statement is an opinion or an assertion of fact, New York courts look to three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.*

As to the second element, under New York law, "[p]ublic policy demands that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action." *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 343 (S.D.N.Y. 2000) (citing *Toker v. Pollak*, 44 N.Y.2d 211, 218 (1978)). Certain communications made in the discharge of public functions are entitled to an "absolute" privilege, which means that the communications are privileged regardless of the speaker's motive. *Nevin*, 107 F. Supp. 2d at 343–44. Other communications enjoy a "qualified" privilege, when it is "fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs in a matter where his interest is concerned." *Id.* (citing *Toker v. Pollak*, 44 N.Y.2d 211, 219 (1978)). New York courts have found that either absolute or qualified immunity extends to statements made in quasi-judicial proceedings, *Kandem-Ouaffo v. Balchem Corp.*, 2018 WL 4386092, at *19 (S.D.N.Y. Sept. 14, 2018), statements made to police officers about suspected crimes, *Udechukwu v. City of New York*, 2018 WL 4561457, at *7 (E.D.N.Y. Sept. 21, 2018), and statements made in the course of litigation or in anticipation of litigation, *Front, Inc. v. Khalil*, 24 N.Y. 3d 713, 718–19 (2015). With regards to statements that are qualifiedly privileged, "a plaintiff can overcome the privilege by showing malice—evidence that the defendant knew the statement to be false, but made it anyway." *Udechukwu v. City of New York*, 2018 WL 4561457, at *7 (E.D.N.Y. Sept. 21, 2018) (quoting *Nevin*, 107 F. Supp. 2d at 344) (internal quotation marks omitted).

The third element of a defamation claim requires fault amounting to *at least* negligence, though the burden of proof depends on whether the plaintiff is a public or private party. *Macineirghe v. County of Suffolk*, 2015 WL 4459456, at *10 (E.D.N.Y. July 21, 2015) (citing *DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005)). Here, Plaintiff is a private party, therefore the appropriate level of fault to be proven is negligence. *Macineirghe*, 2015 WL 4459456, at *10 (citing *Lawlor v. Gallagher Presidents' Report, Inc.,* 394 F. Supp. 721, 732 n.19 (S.D.N.Y. 1975)).

To make out the fourth element of a defamation claim, "the alleged harm must 'consist of the loss of something having economic or pecuniary value which must flow directly from the injury to the reputation caused by the defamation.'" *Cain v. Atelier Esthetique Institute of Esthetics, Inc.*, 733 Fed. Appx. 8, 11 (2d Cir. 2018) (quoting *Celle v. Filipino Reporter Enters. Inc.*, 209 F. 3d 163, 179 (2d Cir. 2000)). However, defamation *per se* "absolves a plaintiff of the requirement to plead special damages because the law presumes the damages will result." *Cain*, 733 Fed. Appx. at 11 (international quotation marks and citations omitted). Defamation per se includes statements "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession, (iii) that plaintiff has a loathsome disease, or (iv) imputing unchastity to a woman." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143 (E.D.N.Y. 2014) (quoting *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011)) (internal quotation marks omitted).

"[A] threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." *Burton*, 2018 WL 4759735, at *11 (quoting *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997)) (internal quotation marks omitted). "The court's threshold inquiry is guided not only by the

meaning of the words as they would be commonly understood, but by the words considered in the context of their publication." *Id.*

B. The Motion to Dismiss Plaintiff's Defamation Claim is Denied

The Court will now apply the standard discussed *supra* to the facts at bar. As a threshold matter, the Court must determine what statements are at issue. Plaintiff claims that the defamatory statements are those made in paragraphs 1–55 of the Complaint. (*See* Compl. ¶ 62.) However, the Court finds this unspecific description to be inaccurate as many of the paragraphs contained therein relate to general background information such as Plaintiff's residence. In reviewing the Complaint, the following statements allegedly made by Defendant appear to be the ones Plaintiff argues are defamatory:

1. That Defendant had been subjected to unwanted and unwarranted sexual harassment by Plaintiff ("Statement 1"). (Compl. ¶ 32.)

2. That Plaintiff had a strange obsession with Defendant's menstrual cycle and would repeatedly make comments about it ("Statement 2"). (*Id.* ¶ 33.)

3. That these comments made Defendant "extremely uncomfortable, anxious, and violated" ("Statement 3"). (*Id.* ¶ 34.)

4. That Plaintiff was very concerned with the female players' appearances and told them they must dress nicely and shave their legs ("Statement 4"). (*Id.* ¶ 35.)

5. That Plaintiff screamed obscenities and verbal abuse at a female tennis player on the opposing team at a tournament against a team from Delaware, and that the conduct was so disturbing that the parent of the player called Hathaway to complain about the conduct ("Statement 5"). (*Id.* ¶ 37.)

6. That Plaintiff sent Defendant a YouTube video entitled "Casually Explained: Is She Into You" which was inappropriate and suggested that Plaintiff wanted to know if Defendant was "into him" ("Statement 6"). (*Id.* ¶ 39.)

7. That Plaintiff threatened Defendant after she did not respond to his advances ("Statement 7"). (*Id.* ¶ 40.)

> 8. That Plaintiff "made statements to students about his divorce." ("Statement 8"). (*Id.* ¶¶ 52–53.)

Under the first element, the Court must determine whether these statements are opinion. Here, Statements 1 and 2 have a precise meaning, are capable of being proven false, and are likely to be taken as facts in the context in which they were shared. As such, Statements 1 and 2 are not opinion. By contrast, Statement 3 is clearly an opinion as it cannot be proven false, and it is offered as an opinion about Plaintiff's own emotions. Statements 4 through 8 all have precise meanings, are capable of being proven false, and are likely to be perceived as facts in the context in which they were transmitted. Accordingly, the Court finds that Statements 1, 2, 4, 5, 6, 7, and 8 are not opinions and meet the first element of a defamation claim.

Moving on to the second element of a defamation claim, the question is whether these statements were published to a third party without authorization or privilege. Defendant argues that these statements are protected by the privilege afforded to communications made pertinent to litigation or judicial proceedings. (Mem. in Supp. [DE 22-1] at 8.) Plaintiff has attached a redacted copy of the Letter in which the alleged defamatory statements at issue were set forth.[3] The Letter states that it was "sent preliminarily to any further legal action in an attempt to reach an amicable resolution to the current situation." (Letter at 1.) Defendant argues that sending the Letter was a required first step of Title IX litigation and was sent only to the Title IX Officer and the General Counsel. (Mem. in Supp. at 9.) Plaintiff responds that the Letter was sent in bad faith in an attempt to extort additional scholarship funds, and thus should not be privileged. (Mem. in Opp. [DE 22-2] at 13.)

---

[3] The Court may review and consider the Letter, as it is attached to the Complaint. *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc.*, 2011 WL 2610661, at *3 (S.D.N.Y. June 27, 2011) ("In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in or attached to the complaint[.]")

Defendant is correct that certain communications made in anticipation of good faith litigation are privileged communications. *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 719 (2015) (holding that the privilege afforded to pre-litigation communication "should only be applied to statements pertinent to good faith anticipated litigation.") Here, however, the Court finds that Defendant's intention in sending the Letter is an unresolved question of fact that is not appropriate for the Court to determine on a motion to dismiss. *See Lambe v. Kahlon*, 2016 WL 6948456, at *2 (E.D.N.Y. Jan. 14, 2016) (finding that issues of fact precluded summary judgment with regards to the defendant's intent in sending certain letters containing allegedly defamatory statements, and whether they were sent in anticipation of litigation). It is unclear whether the Letter was in fact sent in anticipation of litigation, and if so, whether that litigation was undertaken in good faith. As the Court must assume that the well-pleaded factual allegations are true on a motion to dismiss, it appears that the statements at issue in the Letter are not privileged as statements made in anticipation of litigation.

Defendant also argues that her statements were protected under the "common interest" privilege. "New York law recognizes a qualified common interest privilege when the defamatory statement is made between persons who share a common interest in the subject matter." *Fuji Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009); *see also Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996). A plaintiff alleging defamation can overcome the common interest privilege by showing that the statement was made with either common law or constitutional malice. *Fuji*, 669 F. Supp. 2d at 412 (citing *Phelan v. Huntington Tri-Village Little League, Inc.*, 57 A.D.3d 503, 505 (2d Dep't 2008)). "Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication." *Fuji*, 669 F. Supp. 2d at 412 (quoting *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 98

(2d Cir. 2000)) (internal quotation marks omitted).  "Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication."  *Id.*  As the Second Circuit has explained, "[t]he critical difference between common-law malice and constitutional malice . . . is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth."  *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992)).  To overcome the common interest privilege, "mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient[.]"  *Fuji*, 669 F. Supp. 2d at 412 (quoting *Golden v. Stiso*, 279 A.D.2d 607, 608 (2d Dep't 2001)) (internal quotation marks omitted); *see also Panghat v. New York Downtown Hosp.,* 85 A.D.3d 473, 474 (1st Dep't 2011) (finding that defendants statements were "protected by the common interest privilege," since "[p]laintiff merely asserted in conclusory fashion that the statements at issue were made with malice, which is insufficient to overcome the privilege").

Courts have found that work-related communications about an employee may fall within the scope of the privilege.  *See Fuji*, 669 F. Supp. 2d at 412 (finding that a memorandum distributed to employees about a co-worker's employment-related misconduct was protected by the common interest privilege); *Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 372 (W.D.N.Y. 2012) (holding that defendants who worked together "clearly shared a common interest in the subject matter of [one of the defendant's] statements about [one of the plaintiffs]"); *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 146 (2d Cir.2001) ("This 'common interest' privilege has been applied to communications within a firm concerning the actions of its employees") (citing *Liberman,* 80 N.Y.2d at 437); *Albert v. Loksen,* 239 F.3d 256, 272 (2d

Cir.2001) ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege")). A complaint from a member of one organization to a supervisory official concerning a member's conduct will also trigger the qualified privilege. *See Phelan*, 57 A.D.3d at 505 (finding that a letter from a little league umpire to the director of the Department of Parks and Recreation concerning a little league coach's "unacceptable and despicable language and behavior" was shielded by the common-interest privilege (internal quotation marks omitted)). Most relevantly, another district court has noted that "[a] letter to the President of a University by a concerned father regarding the treatment of his student son by a coach employee of the University [who was accused of "sexual misconduct"], which had a wider application to the [] University community, would appear to satisfy the requirement for assertion of a qualified privilege." *James v. DeGrandis*, 138 F. Supp. 2d 402, 417 (W.D.N.Y. 2001).

Based on this precedent, the statements at issue may fall within the "common interest" privilege. Defendant shared a common interest in the subject matter of Plaintiff's allegedly inappropriate and unprofessional statements—toward Defendant herself—with Plaintiff's supervisors, who are also the administrative officials of Defendant's university. The entire contents of the Letter dealt with matters relating to Defendant's interactions with Plaintiff as a student-member of the tennis team Plaintiff coached. In addition, the Letter was not published to anyone outside of the administrative officials who were Plaintiff's direct supervisors and who were responsible for handling such matters. Nevertheless, "[b]ecause the common interest privilege constitutes an affirmative defense . . . it does not lend itself to a preanswer motion to dismiss . . . ." *Peters v. Molley College of Rockville Centre*, 2008 WL 2704920, at \*9 (E.D.N.Y.

July 8, 2008) (quoting *Demas v. Levitsky*, 291 A.D.2d 653, 661 (3d Dep't 2002) (internal quotation marks omitted)); *see also Roth v. Univ. of Rochester*, 981 F. Supp. 2d 184, 213 (quoting the same, and denying the motion to dismiss because the pleadings contended that the statements were made with malice). Accordingly, the Court does not find that the statements were privileged at this stage of the litigation.

The third element requires that the alleged defamatory statements are made through fault amounting to at least negligence on the part of the publisher. Defendant does not contest that the Complaint fails to allege negligence. As this element is undisputed, the Court finds that Plaintiff has sufficiently set forth the third element of a defamation claim.

The final element requires that the alleged defamatory statements either constitute defamation per se or caused special damages. Here, the alleged defamatory statements tended to injure Plaintiff in his trade, business, or profession. *See Thorsen*, 996 F. Supp. at 143. These statements imputed to Plaintiff unprofessional and inappropriate conduct toward young women. If true, these statements would make it extremely difficult for Plaintiff to continue his career as a coach of student tennis teams. Therefore, these statements constitute defamation per se and the fourth element is met. As such, Plaintiff need not plead special damages.

C. Pleading Standard for a Defamation Claim

Defendant separately argues that the allegation that she made a statement about Plaintiff's divorce (Statement 8) is not legally actionable because the Complaint does not set forth "the particular words complained of, as well as the person to whom the defamatory statements were made." (Mem. in Opp. at 5.) This argument is unavailing, as the heightened pleading standard for defamation claims in New York does not apply to a case in federal court. *Thorsen*, 996 F. Supp. 2d 143, 163 (E.D.N.Y. 2014) (citing *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659,

671–72 (S.D.N.Y. 2007)); *see also Doe v. Doe*, 2017 WL 3025885, at * 11 n. 7 (S.D.N.Y. July 14, 2017) (citing the same). Pursuant to the federal pleading standard governed by the liberal requirements of Fed. R. Civ. P. 8(a)(2), Plaintiff has sufficiently plead a defamation claim as to Statement 8.

## CONCLUSION

Based on the foregoing, Plaintiff has sufficiently alleged a defamation claim for Statements 1, 2, and 4 through 8. As such, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied as to those statements.

**SO ORDERED.**

Dated: Central Islip, New York
November 1, 2018

/s/
Denis R. Hurley
Unites States District Judge